Christian, J.
This case is before us upon appeal from an order of the corporation court of the city of Norfolk, perpetuating an injunction. The material facts in the case are as follows:
Chamberlaine, the appellee, is the owner of a lot and building in the city of Norfolk known as the “Citizens bank,” situate on Main street in said city. The front line of said building is on the north line of Main street, and fronts on said street eighteen feet.
In the early part of the year 1867 the buildr ing then on said lot was destroyed by fire. Chamberlaine proceeded to rebuild upon the same lot, and before he put up the front wall of said building he made application to the common and select councils of the city of Norfolk “that he might be allowed to have open iron steps to a new building now (then) being erected on Main street next to the First National bank, to extend no further out than the buttresses of the steps of said bank; the space to be occupied being the same used for a broad step and descent to the building recently destroyed by fire.”
Upon this petition the common council, on the same day, adopted the following resolution:
“Resolved, That the steps of the building of R. H. Chamberlaine, now being erected on Main street near Bank street, be permitted, provided they do not occupy any more of the pavement than the steps of the building recently destroyed.”
*520 *This resolution was concurred in by the select council at their next meeting.
Chamberlaine, having obtained this permission from the select and common councils, completed his building, putting up the front wall immediately upon the line of the street, and extended the steps (of which there was a pair at either end of said building) out upon the sidewalk or pavement, the distance of four feet four inches, and between these steps thus projecting from each end of the building, there was dug out an excavation, and steps were constructed leading to a basement under the house.
In February, 1876, the following petition of the owners and occupants of buildings adjacent to and on the same block with the “Citizens bank,” was presented to the select and common councils of the city of Norfolk:
"We, the undersigned, owners or occupants of the stores known as ‘Atlantic block,’ respectfully represent to your honorable bodies that we find the projection of the steps of the ‘Marine and Citizens bank’ is a serious detriment and nuisance to us; our stores, at certain times, being almost unapproachable by parties coming from the eastern portion of the city.
“We believe that this trespass upon the public sidewalk, in the business section of the place, is a nuisance to all of our citizens, a drawback to business,'and ought to be removed.
“We, therefore, request that you will instruct the city inspector of streets to have the above mentioned steps removed from the pavement within thirty days after the granting 'of this petition.”
In accordance with this petition the councils directed the inspector of streets to remove the steps of the Marine and Citizens bank, if not removed by the owners within sixty days. The Marine bank (which immediately adjoins the Citizens bank), upon notice given by the inspector, *removed its steps, which projected the same distance into the street as those of the Citizens bank. But the latter (the Citizens bank) applied for and obtained an injunction restraining and enjoining the inspector of streets from carrying out the orders of the city councils to remove the steps of the Citizens bank as an obstruction to the street. The bill of in úinction was answered by the City of Norfolk, and depositions were taken on both sides, and upon a motion to dissolve the injunction the corporation court, on the 6th July, 187.6, entered the following decree:
“This cause came on this day to be hea-rd upon the bill of the complainant, the answer of the City of Norfolk, general replication to the said answer, the exhibits filed, the examination of witnesses; and on the motion of the defendant, the City of Norfolk, to dissolve the injunction awarded in the cause.on the 29th day of May, 1876, and was argued by counsel.
“On consideration whereof, and the court being of opinion that the order of the councils of the city of Norfolk directing the removal of the steps of the Citizens bank building, the property of the plaintiff in the bill and proceedings mentioned, from the sidewalk of Main street, is a special and unjust discrimination against the plaintiff, and therefore illegal and void, doth so decide and doth overrule the said motion and continue the said injunction.”
Afterwards a decree was entered perpetuating the injunction. From this decree an appeal was allowed by one of the judges of this court.
I am of opinion, that this decree of the corporation court of the city of Norfolk perpetuating the injunction is plainly erroneous.
It is well settled that a street in a city or town is a public highway. The word “highway” is considered as *the genus of all public ways, so that a common street in any city or town being common to all people is a public highway. Angelí on Highways, § 24, p. 19, and notes.
Public streets, unless there be some special restriction when dedicated or acquired, are for the public use, and the use is none the less for the public at large as distinguished from the municipality, because they are situate within the limits of the latter. In other words, public streets are not the property of the municipality or of the people of the municipality, but of the public at large. The legislature may, and generally does, of right, give the supervision and control of streets to the local authorities, but the property in the streets is not in the municipality, but in the public at large. The legislature of the state alone represents the public at large, and it alone has full and paramount' authority over all public highways. As was well said by Chief Justice Gibson, in O’Connor v. Pittsburg, 18 Pa. St. R. 187: “To the commonwealth here, as to the king in England, belongs the franchise of every highway as a trustee for the public; and streets, regulated and repaired by the authority of a municipal corporation, are as much highways as rivers, railroads, canals or public roads laid out by authority of the state.”
Whether the fee of the street be in the municipality in trust for the public use, or in the adjoining proprietor, it is in either case of the essence of the street that it is public, and hence under the paramount control of the legisuature as the representative of the public. Streets do not belong to the city or town, within which they are situated, although acquired by the exercise of the right of eminent domain, and the damages paid out of the corporation treasury.
The authority of municipalities over streets, they derive, as they derive all their powers, from the legislature — from charter or statute. The .fundamental idea of *a street is not only that it is public, but public for all purposes of free and unobstructed passage, which is its chief and primary use. 2 Dillon on Corporations, §§ 518-541, and cases there cited.
Upon these established principles, I am of opinion that the select and common councils of the city of Norfolk had no authority to pass *521 the resolution of the 27th May, 1867, granting permission to the appellee, Chamberlaine, to occupy, by the steps of his building, any portion of a public street in the city, of Norfolk. There is nothing in the charter of the city, or in any act of the legislature, authorizing the use of a public street for private convenience or profit; but on the contrary, by an ordinance of the councils in existence, certainly since the year 1848 up to the present time, it is ordained that “no piazza, porch, steps, fence, enclosure, or any other projection attached to any house or lot, shall be extended beyond the line of the sidewalk” — and against a person so offending is denounced a fine of $5 per day, for so long a time as the same shall remain after notice from the inspector to remove them.
The city councils having no authority to grant permission to Chamberlaine to extend the steps of his building into the public street, and the ordinances specially forbidding it, such extension was an unauthorized obstruction of a public highway and a nuisance which the corporate authorities had a right to abate.
By its chartered rights, there is delegated by the legislature to the select and common councils of the city of Norfolk, the power to make such ordinances, by-laws, orders and regulations as they may deem desirable to carry out (among others) the following powers: To prevent the cumbering of streets in any manner whatever; to remove any structure, obstruction or encroachment in *a street or alley, or any sidewalk thereof; to abate nuisances, &c. (Sess. Acts 1870, p. 191-192.)
The 22d section of this act provides that, “in every case where a street in said city has been encroached upon by any fence, building or otherwise, the city councils may require the owner or owners, if known, or if unknown, the occupant or occupants of the premises so encroaching, to remove the same. If such removal shall not be made within the time ordered by the councils, they may impose a penalty of live dollars for each and every day that it is allowed to continue thereafter, and may cause the encroachment to be removed and collect from the owner reasonable charges therefor, with costs, by the same processes, that they are hereinafter empowered to collect taxes. No encroachment upon any street, however long continued, shall constitute an adverse possession to, or confer any rights upon the persons claiming thereunder as against the city.”
This statute is in conformity with the recognized principles of the general law, which confers upon municipalities the power to regulate and control the use of the public streets of a city or town. See 2 Dillon, ch. 18, Title Streets, and cases there cited.
I am, therefore, of opinion that, under the charter and under the general law, the city councils had the right to order the removal of the steps from the appellee’s building which projected into the street.
But it is contended by the learned counsel for the appellee, in an argument of much inerenuity and learning, that the injunction in this case ought to have been awarded and perpetuated upon two grounds: First, because to remove the steps of his building would necessitate the removal of the entire front wall and involve irreparable damage to the whole structure; and inasmuch as he built the house on the line of the sidewalk, with ^permission from the city councils to extend his steps out upon the sidewalk, the city having through its representatives granted such permission, should now be estopped from asserting its right to remove them, particularly where such removal will result in irreparable damage. Second, because the action of the city councils is an unjust discrimination, not general in its operation, but special, partial and oppressive.
It is a sufficient answer to first position to say that the resolution of the city councils in May, 1867, purporting to give authority to place the steps in the public slreets, was simply ultra vires and could not bind the corporation.
The general principle of law is settled beyond controversy, that the agents, officers, or even the city council of a municipal corporation, cannot bind the corporation by any contract or act which is beyond the scope of its powers, or entirely foreign to the purposes of the corporation, or which (not being in terms authorized) is against public policy. The doctrine grows out of the nature of such institutions and rests upon reasonable and solid grounds. The inhabitants are the cor-porators — the officers are but the public agents of the corporation. The duties and powers of such officers are prescribed by statute or charter which all persons not only may know but are bound to know.
The opposite doctrine would be fraught with such danger and accompanied with such abuse that it would soon end in ruin or municipalities. These considerations vindicate the reasonableness and necessity of the rule that the corporation is bound only when its officers or agents by whom it can alone act, if it acts at all, keep within the limits of the chartered authority of the corporation. It was said by a distinguished judge on this subject that “the history of the workings of municipal bodies has demonstrated the salutary nature of this principle, and *that it is the part of true wisdom to keep the corporate wings clipped down to the lawful standard.” It results from this doctrine that unauthorized contracts are void, and in actions thereon the corporation may successfully interpose the pka of ultra vires, setting up, as a defence, its own want of power under its charter or constituent statute to enter into the contract. 1 Dillon, § 381; 2 Dillon, § 767, and cases there cited. In the latter section the learned author strongly observes: “There can be no corporate liability where the act complained of is one not authorized by the charter or constituent acts of the corporation, or some valid legislative enactment applicable to it. _ The principle that a municipal corporation is bound by the acts of its officers only when within the charter or scope of their powers, and that acts outside of the powers of the corporation or of the *522 officers appointed to act for it are void as respects the corporation, is vital, and the opposite doctrine has no support in reason, and very little, if any, in the judgments of the courts.”
These doctrines, I think, govern the cit.se beforé us. Indeed, it cannot be said that there was a contract between Chamberlaine and the city authorities. The most that can be said is, that it was a mere license given without authority, and of course revocable. And it is plain that this is not a case where the doctrine of estoppel applies. There is a class of cases (and it is upon these that the appellee relies) where a corporation will be estopped to avail itself of certain irregularities or improper conduct of its own agents or officers. But the doctrine of estoppel can never arise in a case where the act is ultra vires; where the corporation has no power to act, and its action was outside of its chartered authority.
The doctrine of estoppel applies only to a case where the act of the corporation is within the exercise of the *general' powers conferred, but never to a case where the act' done is beyond the powers conferred by charter or by statute.
Wherever the act is one arising out of matters or transactions within the general powers of the corporation, the corporation will be estopped from pleading any irregularities of its agents or officers in the exercise of those general powers; but it may always show that under no circumstances could the corporation make a contract of the character in question. Dillon, §§ 381, 436, 767, and cases cited in notes.
I am, therefore, of opinion that whatever damage and loss the appellee, Chamberlaine, may sustain in consequence of having to remove the steps of his building, or in consequence of putting the front wall of his building on the line of the street, with the privilege of extending his steps into the street, by permission of the city councils, such loss and damage (if any has occurred) cannot be recovered against the corporation, although it may have arisen by the act of the councils in granting such permission.
Every man is presumed to know the law. Chamberlaine ought to have known and must be presumed to know that the city councils of Norfolk had no authority to dedicate to his use any portion of the public streets of the city. In acting upon the unauthorized permission of the city councils he took all the risk, and if, by such unauthorized act, loss has accrued, he cannot visit that loss upon the city, but must suffer it himself, for there can be, as has already been shown, no _ corporate liability where the act cóm-plained of is not authorized. But in this case there is no great loss or hardship after all. Chamberlaine has for ten years received a rental of $400 per year for the use of the public street, m having convenient *access to which, under the law, he was not entitled. This of itself will compensate him to a considerable extent for any loss he may sustain for the removal of the front wall of his building. But whether it does or not, whatever damage or 'injury he may sustain,that damage and that injury, whatever iti may be, .growing out of an unauthorized and. unlawful act, cannot be assessed against the corporation.
I am further of opinion, that the order of the councils directing the inspector of streets: to remove the steps of the appellee’s building,' was not an unjust and partial discrimination-against the appellee, and therefore void. i
The record shows that the same order was. made as to the Marine bank on the same square, and that the steps of the latter was. removed by the owners. The fact that in one order all the obstructions on the street (if there be others) were not embraced, does not show any partiality or unjust discrimination; non constat that other similar orders have not even been made, or will be made if neces-essary. We know nothing of this from the record.
Certainly it cannot be said, because when: the city councils direct the removal of one-obstruction in the streets of a city it does not at the same moment .remove all, that the removal of one is unjust, partial and oppressive, and therefore the order is void. Such a proposition cannot be sustained by reason or' authority; and the cases referred to by the’ learned counsel have no application to such a case as the one before us.
Upon the whole case,-1 am of opinion that the decree of the corporation court of the city of Norfolk should be reversed; that the injunction should be dissolved, and the bill5 dismissed.
The other judges concurred in the opinion of Christian, J.
The decree was as follows:
*The court is of opinion, for reasons' stated in writing and filed with the record, that the decree of the said corporation court perpetuating the injunction awarded to the appellee, is erroneous. It is therefore decreed and ordered that the said decree be reversed and annulled, and that the appellant recover against the appellee its costs by it expended in the prosecution of its appeal and writ of supersedeas here. And this court, proceeding to enter such decree as the said corporation court ought to have entered, it is decreed and ordered that the said injunction be dissolved, and the appellee’s bill be dismissed. But it appearing to the court that the term of sixty days allowed by the city councils within which the appellee was required to remove the obstruction complained of has expired, while the appellee was engaged in the prosecution of his injunction suit, and this court being of opinion that under the circumstances of this case the appellee should have still further time to effect such removal without incurring the penalties imposed by statute, it is therefore decree dand ordered that the dissolution of said injunction shall not take effect until the 1st day of March, 1878; which is ordered to be certified to the corporation court of the city of Norfolk.
Decree reversed.